UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------

KEITH I. HURST,
        Plaintiff,
   -v-                                        9:16-CV-1062
                                                      (DNH/TWD)

A. MOLLNOW Correctional Officer, Washington
Correctional Facility; and EISENSCMIDT,
Sergeant, Washington Correctional Facility,

        Defendants.

------------------------------------

APPEARANCES:                                      OF COUNSEL:

ABDELLA LAW OFFICES                   CHRISTOPHER MATTHEW
Attorneys for plaintiff                       STANYON, I, ESQ.
8 West Fulton Street
P.O. Box 673
Gloversville, NY 12078

HON. LETITIA JAMES                       MARK G. MITCHELL, ESQ.
Attorney General for the State of New York   Ass't Attorney General
Attorneys for defendants
The Capitol
Albany, NY 12224                                RICHARD C. WHITE, ESQ.
                                                        Ass't Attorney General

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

**I.    INTRODUCTION**

    Plaintiff Keith Hurst ("Hurst" or "plaintiff") brings the present complaint under 42 U.S.C. § 1983, alleging that defendants A. Mollnow ("Mollnow") and Sergeant Eisenschmidt ("Eisenschmidt") subjected him to excessive force in violation of his Eighth Amendment rights against cruel and unusual punishment. After reviewing the parties' pretrial submissions, this

Court moved *sua sponte* for summary judgment because of a lack of genuine dispute of material fact. The parties were given nine days to consider the motion and respond. The motion has been fully briefed by both parties and will now be considered on the parties' submissions without oral argument.

II.     **BACKGROUND**

On July 1, 2016, Hurst was an inmate at Washington Correctional Facility ("Washington") in New York. Dkt. 1, p. 4.[1] At approximately 1:00 p.m., plaintiff was visiting another inmate's "cube" without permission. *Id.* at 12. Mollnow told plaintiff that he needed permission to visit other inmates' cubes. *Id.* Plaintiff returned to his own cube, but not before cursing at her. *Id.* In response, and at Eisenschmidt's direction, she placed plaintiff under keeplock/feed-in status. *Id.*; *see* Dkt. 87, p. 3.

At approximately 1:20 p.m., Hurst approached the officer's desk, where Mollnow sat, and began arguing his keeplock/feed-in designation. Dkt. 1, p. 11. The corrections officer told plaintiff to leave and return to his cube, but he "refused and continued to argue." *Id.* She repeated the order. *Id.* Plaintiff stepped up onto a podium that was in the room. *Id.* She issued him a third direct order to step off the podium and return to his cube. *Id.* Plaintiff refused, and she responded by sounding her personal alarm, at which point plaintiff retreated. *Id.*

Defendants argue that this was the end of the matter. Hurst, however, tells a different story. According to plaintiff, when he returned to his cube and surrendered, a group of "between seven and ten" officers apprehended him. Dkt. 96, ¶ 4. He alleges that the corrections officers then took him to Washington's entryway and "began to repeatedly strike, punch[,] and kick [him] while [he] was on the ground" and shouted racial epithets at him. *Id.*

---
[1] Pagination corresponds with CM/ECF.

¶ 5. He alleges that the officers continued to assault him for approximately five minutes, and during the course of the beating, Mollnow kicked him in the left eye. *Id.* ¶¶ 6-7. Plaintiff affirmed that her kick rendered his left eye "blurry," and that his vision remains impaired. *Id.* ¶ 13. After the initial beating, Hurst alleges that Eisenschmidt transported him to another facility where he continued to beat plaintiff for "approximately twenty minutes." *Id.* ¶¶ 8-10. In the course of that alleged beating, he said "derogatory things" to plaintiff and slammed plaintiff's head against the wall "multiple times." *Id.* ¶ 9.

On July 2, 2016, Hurst was transferred to Washington's Special Housing Unit. *See* Dkt. 86, p. 37. As part of that transfer, plaintiff underwent a health screening that same day. *Id.* During the screening, plaintiff denied any vision problems. *Id.* Plaintiff's examiner determined that he had no lesions or rashes. *Id.*

On July 6, 2016, Hurst received another medical examination. Dkt. 86, pp. 8, 35. As part of that examination, plaintiff's entire body was photographed. *Id.* at 8. Those photographs revealed a half-inch scab on plaintiff's left forearm, a quarter-inch scab on his right elbow, and a "minute scratch" on his right shoulder. *Id.* The treatment notes also provide that plaintiff had "several rashes on [his] neck [and] other areas." *Id.* at 35. Plaintiff also complained of pain in his chest and rib area, but he stated that this pain was "all better." *Id.* Plaintiff has since been released from prison. He has never, on the record before this Court, sought treatment for his left eye.

Hurst filed the instant complaint on August 31, 2016. Dkt. 1. On January 22, 2018, defendants moved for summary judgment arguing plaintiff failed to exhaust his administrative remedies. Dkt. 41. On August 30, 2018, that motion was denied. Dkt. 63. However, defendants were permitted to request a hearing on the issue of exhaustion. *Id.* On August 7, 2019, the parties conducted that hearing before United States Magistrate Judge Thérèse

Wiley Dancks. Text Entry dated August 7, 2019. On August 28, 2019, this Court adopted Magistrate Judge Dancks' report and recommendation denying defendants' affirmative defense that plaintiff had failed to exhaust his administrative remedies. Dkt. 85. On September 4, 2019, this Court moved *sua sponte* for summary judgment. Dkt. 95. The parties were given nine days to respond. *Id.* at 4. The parties having duly responded, the motion will now be considered.

### III. **LEGAL STANDARD**

Under Federal Rule of Civil Procedure ("Rule") 56(f), this Court may "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute," so long as it first gives the parties "reasonable time to respond." Rule 56(f)(3). A dispute concerning a material fact is not genuine unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roberts v. Univ. of Rochester*, 573 F. App'x 29, 31 (2d Cir. 2014) (summary order) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### IV. **DISCUSSION**

To prove an Eighth Amendment violation for excessive force, a plaintiff must prove that there was an objective harm done which does not comport with "contemporary standards of decency." *See Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992). The extent of injury may provide some indication of the amount of force applied by corrections officers and, thus, whether that force was excessive. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." *Id.* at 38.

"The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the

use of force is not of a sort repugnant to the conscience of mankind." *Wilkins*, 559 U.S. at 37-38. The test for whether the force is repugnant to the conscience is "whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016).

Additionally, under the doctrine of qualified immunity, state officials "operating under color of state law are . . . entitled to summary judgment when they can establish that either (1) a constitutional right was not violated or (2) the right was not clearly established at the time of the violation." *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014) (internal citations, quotation marks, and footnote omitted).

Hurst's arguments in opposition to this Court's motion for summary judgment largely turn on *Wilkins*, and the Supreme Court's holding that force, rather than injury, is the essential determinant of an Eighth Amendment claim. 559 U.S. at 38. His arguments miss the point.

Although the *Wilkins* Court noted that "[i]njury and force . . . are imperfectly correlated," they are, nevertheless correlated. *See* 559 U.S. at 37-38. As such, Hurst's unmarked state one day after he alleges that several guards rained blows down on him raises questions that he has not answered. Of course, chance and natural fortitude provide for a range of possible injuries from a single hostile act. But no reasonable jury could believe that plaintiff was viciously beaten by between seven and ten corrections officers for five full minutes, and then by a single corrections officer for another twenty, including slamming his head against a wall "several times," and yet be completely unmarked the next day. Dkt. 96 ¶¶ 4-10; 86, p. 37. It is simply not possible that plaintiff's account is accurate.

This is especially true because Hurst has done nothing to corroborate that account. This Court asked plaintiff for concrete proof of the encounter or his injuries, and he has

5

provided none.² He has not provided evidence of any treatment for his left eye, despite having been released from prison and having had every opportunity to have done so. Moreover, the day after he alleges that he was beaten, he reported no vision problems. Dkt. 86, p. 37. The record evidence flatly contradicts his purported testimony.³

Again, it must be stressed that the lack of an apparent injury alone is not fatal to Hurst's complaint. Instead, the complaint must be dismissed because the divergence between plaintiff's narrative and the concrete evidence is so vast. If plaintiff were allowed to proceed to trial on the strength of his affidavit alone, discredited as it is by every piece of evidence, it is difficult to imagine a limiting principle. By a standard that would allow plaintiff's showing a trial, any prisoner who so much as asserts a claim of excessive force would automatically be entitled to the same.

This Court is not unsympathetic to the possibility of corrections officers using force maliciously and sadistically against inmates without causing lasting injury. *See Harris*, 818 F.3d at 63. But that is not the issue here. The issue is the futility of empaneling a jury based only on Hurst's unsubstantiated assertions of an assault that—plaintiff's own—photographic evidence renders impossible to believe. Dkt. 86, p. 8.

Hurst does not simply say that he was struck once, or that he was pushed, or any other form of force that, though excessive, could still credibly result in his unblemished state the next day. Instead, the story that he maintains is that he was savagely beaten for a full twenty-five minutes, including being kicked in the eye and having his head slammed against the wall several times. Dkt. 96, ¶¶ 5-10. That narrative cannot be credited considering the weight of the evidence that he was uninjured the next day, and especially five days later.

---

² The only injuries in the record for the timeframe in question are two small scabs, one "minute scratch," and possibly some pain in Hurst's chest, none of which he attributes to Mollnow or Eisenschmidt. Dkt. 86, pp. 8, 35.
³ It is also worth noting that the two named defendants in this case are the only two corrections officers whose names appear in the grievances filed against plaintiff on July 1, 2016. Dkt. 1 pp. 11, 12.

Because no reasonable juror could credit plaintiff's narrative—and because his narrative is his sole piece of evidence—his complaint must be dismissed.

V. **CONCLUSION**

Hurst's own exhibits flatly contradict his anticipated testimony that defendants savagely beat him. As such, though there may be some dispute as to what happened on July 1, 2016, that dispute is not genuine. Even drawing every possible inference in plaintiff's favor, and assuming that any force was, in fact, used against him, there is no evidence that such force was used in a manner repugnant to the conscience of mankind.[4] By extension, his Eighth Amendment claims must be dismissed.[5] *See, e.g., Taylor v. Schmidt*, 2018 WL 2021537, at *5-6 (N.D.N.Y. Mar. 26, 2018) (granting motion to dismiss where plaintiff's complaint is "flatly contradicted by his own exhibits"); *Jones v. Fischer*, 2013 WL 5441353, at *6 n.6 (N.D.N.Y. Sept. 27, 2013) (noting on summary judgment that "there is no question of fact" where plaintiff's exhibits contradict his statements).

Therefore, it is ORDERED that

Plaintiff Keith Hurst's complaint is DISMISSED WITH PREJUDICE.

The Clerk of Court is directed to enter judgment accordingly and close the file.

IT IS SO ORDERED.

_____
David N. Hurd
U.S. District Judge

Dated: September 27, 2019
Utica, New York.

---

[4] Plaintiff pleaded guilty at a disciplinary hearing to creating a disturbance and swearing at Mollnow on July 1, 2016, which would justify any *de minimis* force used by the defendants.
[5] Alternatively, because the evidence does not establish that plaintiff's constitutional rights were violated, defendants would also be entitled to qualified immunity. *Raspardo*, 770 F.3d at 113.